**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**HAMED WARDAK,**

                                **Plaintiff,**                              5:21-mc-00047 (BKS-TWD)

v.

**BRIAN CAVANAUGH,**

                                **Respondent.**

---

**Appearances:**

*For Plaintiff*:
Rhett O. Millsaps, II
Lex Lumina PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151

*Respondent Pro Se:*
Brian Cavanaugh
Syracuse, NY 13208

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.**      **INTRODUCTION**

On July 15, 2021, Plaintiff Hamed Wardak issued a subpoena to Respondent pro se Brian Cavanaugh in connection with a civil action pending before the Southern District of New York where Wardak is named as the defendant. (Dkt. No. 1-3, at 8); *Goolden v. Wardak*, No. 1:19-cv-06257, 2020 WL 4271695, 2020 U.S. Dist. LEXIS 131748 (S.D.N.Y. July 23, 2020). Respondent failed to respond to the subpoena. (Dkt. No. 1-1, at 5). Subsequently, Plaintiff moved in this Court for an order to show cause why Respondent should not be held in civil contempt. (Dkt. No. 1) ("Contempt Motion"). On November 17, 2021, Respondent filed a letter,

stating that he never received "any subpoena in the above-referenced matter," that he has "never been served, nor [has he] ever received[] any motion papers regarding a request to hold [him] in contempt." (Dkt. No. 6, at 2). Respondent failed to appear for oral argument on the Contempt Motion on November 29, 2021, and on December 1, 2021, the Court issued an Order ("Contempt Order") finding Respondent to be in civil contempt, directing Plaintiff to file an application for costs and attorney's fees, and allowing Respondent to file a response. (Dkt. No. 11). Presently before the Court is Respondent's motion to vacate the Contempt Order under Federal Rule of Civil Procedure Rule 60(b) on the grounds that: (1) the Court lacked personal jurisdiction due to improper service of process of the Contempt Motion; and (2) that the subpoena at issue in the Contempt Motion was never properly served and was, in any event, defective. (Dkt. No. 15, at ¶¶ 31–35, 174–81). Plaintiff opposes Respondent's motion. (Dkt. No. 20).[1] Also before the Court is Plaintiff's motion for costs and attorneys' fees, which Respondent opposes. (Dkt. Nos. 12, 32). For the reasons that follow, an evidentiary hearing is required regarding service of the Contempt Motion before the Court decides the remainder of the pending motions.

## II.   FACTS

On October 20, 2021, Plaintiff applied in this Court for an order to show cause why Respondent should not be held in civil contempt. (Dkt. No. 1). A day later, the Court issued a Text Order granting the application, scheduled oral argument for November 29, 2021, and instructed Plaintiff to serve the Contempt Motion and the "Text Order in person, by mail, and by email" and file proof of service by October 28, 2021. (Dkt. No. 2). According to Plaintiff's

---

[1] As Plaintiff observes, Respondent does not identify which subsections of Rule 60(b) he relies on in his motion to vacate. (Dkt. No. 20, at 17). However, given Respondent's assertions that that he did not receive service of the Contempt Motion by mail or otherwise, the Court construes this aspect of Respondent's motion as arising under Rule 60(b)(4). Although Plaintiff argues that Respondent is not entitled to relief under Rule 60(b)(1) (mistake, inadvertence, surprise, or excusable neglect), Rule 60(b)(2) (newly discovered evidence), and Rule 60(b)(3) (fraud), he has not addressed Rule 60(b)(4) (judgment is void for lack of personal jurisdiction). (*See generally* Dkt. No. 20).

affidavit of service, a process server attempted to personally serve Respondent at "his actual place of residence" with the Contempt Motion and Text Order on October 23, 2021, at 2:21 p.m., but "there was no answer at the door." (Dkt. No. 4, at 1–2). When the process server attempted to serve Respondent on October 25, 2021 at approximately 6:22 p.m., the process server "saw a male in the basement of the home," and although the process server "knocked loudly on the door," the male "refused to answer." (*Id.*). Following the third (unsuccessful) attempt at personal service, on October 28, 2021 at 5:52 p.m., Plaintiff's process server affixed the Contempt Motion and Text Order to Respondent's front door, (*id.* at 2), and the motion papers and Text Order were sent to Respondent by first class mail, (*id.* at 3).

On or about November 17, 2021, Respondent filed a letter stating: "I received a torn and damaged envelope in the mail which contained a single piece of paper which appears to be a printout of an email from 'ecf.notification@nynd.uscourts.gov' . . . with a subject line of 'Activity in Case 5:21-mc-00047-BKS-TWD Wardak v. Cavanaugh Order.'" (Dkt. No. 6, at 2). Responded further stated "[t]here was no other paperwork in the envelope" and that he has "never been served, nor have I ever received, any subpoena in the above-referenced matter." (*Id.*).

In light of Respondent's letter, the Court issued a Text Order directing Plaintiff "to re-serve Mr. Cavanaugh with the pending motion papers, the Court's 10/21/2021 Text Order, and this Text Order" but that "[i]n view of the difficulties Mr. Wardak states he has encountered in serving Mr. Cavanaugh personally," the Court directed Plaintiff "to complete service via regular mail and file an affidavit of service by 11/23/2021." (Dkt. No. 5 (citing Dkt. No. 4)). Plaintiff filed an affidavit of mailing on November 22, 2021. (Dkt. No. 10).

3

Respondent did not appear for the November 29, 2021, oral argument. (Text Minute Entry for Evidentiary Hearing held on 11/29/2021). On December 1, 2021, the Court entered an order finding Respondent in contempt of court. (Dkt. No. 11 ("Contempt Order")).

In Respondent's motion to vacate the Contempt Order, he states that he has not been "served with any subpoena, motion for contempt, or other moving papers in any manner." (Dkt. No. 15, ¶ 1(a)). The motion is sworn and notarized. (*Id.* at 42). He disputes much of Plaintiff's process server's Affidavit of Service, claiming that the process server "committed perjury in [the affidavit]." (*Id.* at ¶ 84). Respondent states that he "received nothing in the mail and never found any documents taped to my door." (*Id.* ¶¶ 43, 54). Respondent states that he has "not had any problems receiving mail from other sources; I have had no pause or disruption in my mail service, and I have received mail just as I ordinarily do throughout all times mentioned herein." (*Id.* ¶ 58).

Respondent asserts that after receiving a telephone call from Plaintiff three years ago "to warn [Respondent to] take all steps necessary to protect myself and my family because [Plaintiff] was going to have myself and my family assassinated," he installed "eight high tech surveillance cameras which surveil the perimeter of my home." (*Id.* ¶ 77 (emphasis omitted)). Respondent avers that "[t]ime stamped video [] show[s] that" a process server "arrive[d] at [his] home on the evening of October 28, 2021 at 17:52:13 hours," pulled into Respondent's driveway, "and then sat in his car for 58 seconds, before backing out and leaving." (*Id.* ¶ 88–89 (emphasis omitted)).[2] Respondent states that the process server "never knocked on the door of [his] home and attempted to serve me as he alleges." (*Id.* ¶ 92). Respondent further states that he "was in fact

---

[2] Respondent has "secured the video in a safe place and will turn it over to the Court." (Dkt. No. 15, ¶ 93).

4

home on that date and time" and that had the process server "knocked on the door, and attempted service," he "would have been able to answer the door and receive the process." (*Id.* ¶¶ 94–95).

In response to Plaintiff's process server's assertion that he saw a male in Respondent's basement, (Dkt. No. 4, at 2), Respondent states that "[t]here is only one bedroom in the basement of my home, which has been rented out at all times mentioned in this affidavit," (Dkt. No. 15, ¶ 111). Respondent further asserts that Wardak failed to "make 'genuine inquiries' to ascertain" his "place of work," which Respondent states "has not changed in more than a decade," or to "talk to neighbors to find out where the party might be found." (*Id.* ¶¶ 100, 103 (citations omitted)).

Respondent avers that he was unaware "of what had transpired in Court in my absence" until December 3, 2021, when he received a letter from the Court along with "a copy of the Court's decision and order finding me in contempt." (Dkt. No. 15, ¶ 52).

### III. DISCUSSION

#### A. Standard of Review

Pursuant to Rule 60(b)(4), "a judgment is void if it is entered against a party over whom the court lacks personal jurisdiction." *DeCurtis v. Upward Bound Intern, Inc.*, No. 09-cv-5378, 2012 WL 4561127, at *4, 2012 U.S. Dist. LEXIS 143295, at *10 (S.D.N.Y. Sept. 27, 2012) (citing *Velez v. Vassallo*, 203 F. Supp. 2d 312, 317–18 (S.D.N.Y. 2002)). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service . . . must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *see* N.D.N.Y. L.R. 83.4(a) (requiring service of an order to show cause that is consistent with "the Federal Rules of Civil Procedure for the service of summons").

When a defendant moves to vacate an order "based on improper service of process" and he "had actual notice of the original proceeding but delayed in bringing the motion, [he] bears

the burden of proof to establish that the purported service did not occur." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) (citations omitted). Further, a process server's "sworn statement of service creates a presumption that service has been effectuated." *De Curtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (summary order) (citing *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)). But a defendant's "sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic Ins. Co.*, 301 F.3d at 57 (citation omitted). However, an evidentiary hearing is only necessary if the defendant "swear[s] to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (citation and quotation marks omitted). To do so, a defendant must go beyond a "general denial of service." *Cablevision Sys. N.Y.C. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (summary order) (citing *Old Republic Ins. Co.*, 301 F.3d at 58).

      B.      **Service Requirements**

The Local Rules provide, in relevant part, that in a "proceeding to adjudicate a person in civil contempt of court," "the notice of motion or order to show cause and the papers on which it is based" service must "be made personally in the manner provided by the Federal Rules of Civil Procedure for the service of summons." N.D.N.Y. L.R. 83.4(a). Rule 4 of the Federal Rules of Civil Procedure provides that service of a summons and complaint may be effected by: (1) delivering process to the individual personally; (2) leaving process at the individual dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering process to an authorized agent of the individual. *See* Fed. R. Civ. P. 4(e)(2). Alternatively, Rule 4 permits service to be effected by "following state law for serving a summons in an action . . . in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Under New York law, the following methods may generally be used to serve process on an individual: (1) delivering the summons to the person personally; (2) delivering the summons to a person of suitable age and discretion at the "actual place of business, dwelling place or usual place of abode" and mailing the summons to the person's last known residence or "actual place of business" (a procedure commonly referred to as leave-and-mail service); (3) delivering the summons to an individual designated as the person's agent for service; or (4) "where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of the actual place of business, dwelling place or usual place of abode . . . of the person to be served and by . . . mailing the summons to such person at his or her last know residence or . . . actual place of business." *See* N.Y. C.P.L.R. 308(1)–(4).

**C.     Analysis**

Here, Respondent argues that the Court's December 1, 2021 Contempt Order must be vacated because the Court lacks personal jurisdiction over him due to improper service of process of the Contempt Motion. (Dkt. No. 15, ¶¶ 31–35). Plaintiff responds that he properly utilized "nail and mail" service after three attempts to serve Respondent in person at his "actual place of residence" were unsuccessful. (Dkt. No. 20, at 7).

The Court must first determine whether Respondent had actual notice of the contempt proceeding, for if he did, he "bears the burden of proof to establish that the purported service did not occur." *Burda Media*, 417 F.3d at 299 (citations omitted). In Respondent's November 17, 2021 letter to the Court, he acknowledges receiving this Court's October 21, 2021 Text Order, which states that oral argument "shall be held in person on 11/29/2021 at 12:30 p.m. in Syracuse,

7

New York."³ (Dkt. Nos. 2, 6). Despite this knowledge, Respondent did not appear and delayed nearly a month in bringing this motion. (Dkt. No. 15). In explanation for his delay in challenging service of the Contempt Motion, Respondent states that he "could not ask for such a hearing prior to the filing of this present motion, because I was not provided with any of the paperwork relating to a subpoena or any enforcement action to be given any notice whatsoever of the events at hand." (*Id.* ¶ 46). This statement is not credible in light of Plaintiff's letter filed on November 17, 2021, which is not only addressed directly to the undersigned at the "Federal Building and U.S. Courthouse" in Syracuse, New York, (Dkt. No. 6, at 4), but refers to the content of the Text Order "requiring Hamed Wardak to serve myself with the order to show cause why I should not be held in contempt of court for willful failure to obey a subpoena," (*id.* at 2 (citing Dkt. No. 2)). Respondent's further assertion that an "appearance" at the November 29, 2021 hearing was "impossible" because the Text Order, "did not provide any notice as to the location of the hearing," (Dkt. No. 15, ¶ 48), is not credible, either. The Text Order to which Respondent referred specifically stated the hearing was in Syracuse, New York and Respondent's own November 17, 2021, envelope containing his letter to the Court was correctly addressed to the undersigned at the "Federal Building and U.S. Courthouse, P.O. Box 7336, Syracuse, New York." (Dkt. Nos. 2; 6, at 4). These documents demonstrate that Respondent was aware of the Court location – the Federal Building and U.S. Courthouse in Syracuse. Thus, Respondent had notice of the proceedings and bears the burden of showing that service did not occur. *See Burda Media*, 417 F.3d at 299 (observing that because the defendant "demonstrated his knowledge of this case in August 12, 1998, when he told officer Pascal Robert that 'the period allowed for the

---

³ Indeed, Respondent acknowledges that he had notice of the hearing. In Respondent's motion to vacate the order of contempt, he stated that the mailing he received "did provide a date and time for a hearing, [but] it did not provide any notice as to the location of the hearing." (Dkt. No. 15, ¶ 48).

8

service of these documents had expired'" and because the defendant "chose to delay," "[i]nstead of moving to dismiss under Rule 12(b)(5) . . . [h]e now bears the burden of proving that he was not properly served").

Here, unlike the defendant's "general denial of service" in *Cablevision*, Respondent has asserted specific facts controverting Plaintiff's affidavits of service and mailing, *see* 197 F. App'x at 62. In his sworn declaration, Respondent states that: (1) he has video that proves the process server never left his vehicle and "never knocked on the door of [Respondent's] home"; (2) he has received "nothing in the mail and [has] never found any documents taped to my door"; and (3) there is no evidence that Plaintiff's process server "even asked . . . where [Respondent] worked and that [Plaintiff] is aware of [Respondent's] place of employment, which has not changed in more than a decade." (Dkt. No. 15, ¶¶ 43, 91–92, 103). In light of Respondent's assertions, an evidentiary hearing is required.[4] *See Old Republic Ins.*, 301 F.3d at 57 ("A defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." (citation omitted)).

At the hearing, the parties should also be prepared to address: (1) Respondent's contention that the process server made no inquiries as to Respondent's place of business; and (2) whether, without such inquiries, Plaintiff performed the requisite due diligence before resorting to nail and mail service. *See Jordan v. Pierre*, No. 18-cv-8528, 2019 WL 2461721, at

---

[4] The Court notes that in response to the process server's assertion that he saw a male in Respondent's basement, (Dkt. No. 4, at 2), Respondent states that "[t]here is only one bedroom in the basement of my home, which has been rented out at all times mentioned in this affidavit," (Dkt. No. 15, ¶ 111). In response to the server's statement that he saw the same vehicle in Respondent's driveway multiple times, (Dkt. No. 4 at 1–2), Respondent states that "[d]ue to . . . severe and chronic pain . . . [he is] often not able to drive and will use other means to get around when needed, such as Uber or friends," (Dkt. No. 15, ¶ 115). Thus, "whether or not [his] vehicle is in [his] driveway at any given time is not determinative of whether or not [he is] . . . home." (*Id.* at ¶ 116). The parties are free to address these factual issues at the evidentiary hearing.

*1, 2019 U.S. Dist. LEXIS 89465, at *2 (S.D.N.Y. May 28, 2019) ("In considering whether the 'due diligence' [prerequisite to nail and mail service] has been met, New York courts frequently inquire as to whether a plaintiff attempted service at both the defendant's residence and the defendant's place of employment." (citing *Leviton v. Unger*, 868 N.Y.S.2d 126, 127 (N.Y. App. Div. 2008))); *see also Am. Builders & Contractors Supply Co. v. CR1 Contracting, LLC*, 565 F. Supp. 3d 330, 339 (W.D.N.Y. 2021) (observing that, in general, due diligence "at a minimum, required" three attempts at service "when a working person might reasonably have been expected to be at home" and that when service attempts are not sufficiently varied in time, due diligence also requires service at person's place of business before nail and mail is warranted (quoting *Rodriguez v. Khamis*, 201 A.D.2d 715, 715 (2d Dep't 1994))).

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff and Respondent shall appear for an evidentiary hearing on December 5, 2022 at 1:00 p.m., in Syracuse, New York to resolve the factual disputes regarding service of the Contempt Motion on Respondent; and it is further

**ORDERED** that Plaintiff and Respondent shall file their list of witnesses, with a brief summary of the expected testimony of each witness whom they expect to call at the evidentiary hearing, and their lists of exhibits they expect to introduce into evidence at the evidentiary hearing by November 28, 2022. Plaintiff and Respondent shall exchange all exhibits they expect to introduce at the evidentiary hearing by November 28, 2022.

**IT IS SO ORDERED.**

Dated: <u>November 10, 2022</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge