**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HAMED WARDAK,

                                        Plaintiff,                              5:21-mc-00047 (BKS/TWD)

v.

BRIAN CAVANAUGH,

                                        Respondent.

**Appearances:**

*For Plaintiff:*
Benjamin Allee
Connor Hilbie
Michael H. Reed
Yankwitt LLP
140 Grand Street, Suite 705
White Plains, NY 10601

*Respondent Pro Se:*
Brian Cavanaugh
Syracuse, NY 13208

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

        This matter arises out of a deposition subpoena that Plaintiff Hamed Wardak issued to

Respondent pro se Brian Cavanaugh in connection with a civil action pending before the

Southern District of New York where Wardak is the named defendant. (Dkt. No. 1-3, at 8); *see*

*Goolden v. Wardak*, No. 19-cv-6257, 2020 WL 4271695, 2020 U.S. Dist. LEXIS 131748

(S.D.N.Y. July 23, 2020).[1] After Respondent failed to respond to the subpoena, Plaintiff moved

in this Court for an order to show cause why Respondent should not be held in civil contempt.

(Dkt. No. 1) ("Contempt Motion"). Respondent failed to appear for oral argument on the

Contempt Motion and, on December 1, 2021, the Court issued an Order finding Respondent to

be in civil contempt. (Dkt. No. 11) ("Contempt Order"). Presently before the Court is

Respondent's motion to vacate the Contempt Order and Plaintiff's motion for costs and

attorneys' fees. (Dkt. Nos. 15, 12). The motions are fully briefed. (Dkt. Nos. 20, 21, 22, 32). The

Court held an evidentiary hearing on February 14, 2023, at which Respondent and process server

Dave Miller testified. For the reasons set forth below, Respondent's motion to vacate is denied

and Plaintiff's motion for attorneys' fees and costs is granted in part.

## II.    FACTS[2]

In his motion to vacate Respondent asserts that he was not properly served with the

subpoena, Contempt Motion, "or any other moving papers in this matter." (Dkt. No. 15, at 1, 10–

13). Respondent sought an evidentiary hearing "to determine the credibility of the process

server's sworn statements"; Respondent asserted that the process server, David Miller, lied in his

sworn affidavit. (*Id.* ¶¶ 44–45). The evidence of service, and the Court's findings of fact after

considering all of the evidence from the evidentiary hearing and all of the evidence in this

record, are set forth below.

### A.    Service of the Deposition Subpoena

Plaintiff presented evidence that process server David Miller made eleven attempts, from

July 17, 2021 through August 11, 2021, to personally serve Respondent with the deposition

---

[1] Respondent is the father of the plaintiff in the Southern District of New York action. (Dkt. No. 15, ¶¶ 2–3). The subpoena directed Respondent to appear by video for a deposition and to produce documents. (Dkt. No. 1-3, at 6–14).

[2] The Court assumes familiarity with the procedural history and the Court's previous Memorandum-Decisions and Orders. (Dkt. Nos. 11, 33).

subpoena at Respondent's residence in Syracuse. (Pl. Ex. 8, 14). The evidence included an affidavit of service by Miller, time-stamped photographs documenting Miller's eleven attempts, as well as body camera footage documenting Miller's July 17, 2021 and August 5, 2021 attempts to serve the subpoena, and Miller's testimony at the hearing. (Pl. Ex. 8, 16). Miller testified as follows. During his attempt to serve the subpoena on July 23, 2021, he saw a vehicle in the driveway and he saw Respondent come to the large kitchen window and shut the curtain. (*See* Dkt. No. 1-3, at 16–17). On July 26, 2021, Miller spoke with one of Respondent's neighbors, who confirmed that Respondent resided at that address. (*See id.* at 17). On August 11, 2021, after Miller's eleventh unsuccessful attempt to personally serve Respondent, he affixed the subpoena and notice of subpoena to Respondent's front door, and another process server, Kenneth Wong, mailed the documents to Respondent by first class mail. (Dkt. No. 1-3, at 16–18; Pl. Ex. 14). Plaintiff's Exhibit 8 contains a time-stamped photograph of Respondent's front door on August 11, 2021, with an envelope taped to the door.

Respondent testified that he was unaware that Miller attempted to serve him with the subpoena in July and August 2021. Respondent testified that he did not find the subpoena affixed to his front door. Respondent has surveillance cameras at his home, but he testified that any footage from July or August was erased by November 2021, when he learned about this proceeding.

Having observed both witnesses' testimony, and having considered all of the submissions and evidence in this case, including the extensive corroboration of Miller's attempts to serve the subpoena, the Court credits Miller's testimony regarding service of the deposition subpoena, and does not credit Respondent's testimony that he was unaware of Miller's attempts to serve him with the subpoena.

### B.    Service of the Contempt Motion in October 2021

On October 21, 2021, the Court issued a Text Order scheduling an oral argument for

November 29, 2021, in response to Plaintiff's October 20, 2021 application for an order to show

cause why Respondent should not be held in civil contempt for his failure to comply with the

deposition subpoena. (Dkt. No. 2). In the Text Order the Court instructed Plaintiff to serve his

motion papers and the Text Order "in person, by mail, and by email" and file proof of service by

October 28, 2021. (*Id.*).

### 1.    Plaintiff's Evidence of Service

On October 28, 2021, Plaintiff's counsel filed a proof of service stating that he emailed

Respondent the Contempt Motion and the Text Order to Respondent "at his known email

address." (Dkt. No. 3).[3] Plaintiff's counsel further stated that he caused these documents to be

mailed to Respondent's home address on October 23, 2021, and that a "process server

confirmed" that he served the documents on Respondent at his home address by "nail and mail"

under N.Y. C.P.L.R. § 308(4) "following numerous unsuccessful attempts to serve [Respondent]

in person." (Dkt. No. 3). Plaintiff filed an affidavit of service from process server David Miller,

and an affidavit of mailing from an individual at Miller's office, in support of these assertions.

(Dkt. No. 4).

David Miller testified as follows regarding three attempts in October 2021 to serve

Respondent at his residence with these documents. Miller attempted to personally serve

Respondent with the Contempt Motion and Text Order at his residence on October 23, 2021, at

2:21 p.m., but there was no answer at the door. Plaintiff submitted time-stamped body camera

---

[3] Plaintiff's proof of service identifies the email address where he sent the documents, and at the February 14 hearing Respondent identified this email address as his. (Dkt. No. 3). Respondent, however, testified that he did not receive emails from Plaintiff's counsel because Respondent had blocked emails from Plaintiff's counsel following disputes they had in litigation in the Southern District of New York. (*See* Dkt. No. 15, ¶¶ 29–148).

footage documenting this attempt. (Pl. Ex. 18). When Miller attempted to serve Respondent on October 25, 2021 at approximately 6:22 p.m., Miller saw Respondent in the basement of the home. Miller knocked loudly on the door, but Respondent refused to answer. Plaintiff introduced time-stamped photographs documenting both of these attempts. (Pl. Ex. 9).

Miller testified that his affidavit of service filed with the Court erroneously states what happened on his third attempt to serve the documents on October 28, 2021. Miller's affidavit states that on October 28, 2021 at 5:52 p.m., he affixed the Contempt Motion and Text Order to Respondent's front door. In fact, surveillance video from Respondent's home security cameras, time-stamped October 28, 2021 at 5:52 p.m., shows Miller pulling into Respondent's driveway, sitting in the driveway for approximately a minute, and pulling out of the driveway without exiting the vehicle. (Def. Ex. 26). Miller testified that the time of service listed on his affidavit was incorrect and that he actually affixed the documents to Respondent's front door on the morning of October 28, 2021, and returned that same day at 5:52 p.m. to take a photograph of Miller's house. Miller explained that the Chase Agency, which contracted with him to serve Respondent, requires a process server to make at least three attempts on three separate days in three different windows of time—mornings, afternoons, and evenings. If service does not meet these requirements, the job is considered incomplete in the system, and Miller would not be paid for the service. Miller attempted service the morning of October 28, 2021 because his previous attempts to serve Respondent occurred at 2:21 p.m. and 6:22 p.m., which were afternoon and evening attempts, respectively. Thus, to comply with Chase Agency policy and receive payment for the service, Miller had to attempt to serve Respondent in the morning.

Miller further testified that the Chase Agency requires process servers to use a mobile software application to document attempted service. The software application prompts process

servers to take a photograph which is time stamped and geopositioned, and then process servers use that photograph as an entry to log the event that just took place. Miller testified that he took a photograph when he served Respondent on the morning of October 28, 2021, but it failed to upload to the software. Miller suspected that it did not upload because he did not wait long enough for the photograph to upload properly. He explained that if a process server does not wait long enough at a residence for the photograph to be uploaded properly, and then drives away, getting too far out of range of range of that GPS, the photograph will not upload. Miller testified that he returned to Respondent's residence at 5:52 p.m. the same day—October 28, 2021— because he needed to get a third photograph uploaded into the system to complete the job and generate an affidavit. Thus, Miller explained that the documents were affixed to Miller's front door in the morning, not when the 5:52 p.m. time-stamped photograph was taken. Miller's October 2021 work order is consistent with that testimony; it states that the third attempt was on the morning of October 28, 2021. (Pl. Ex. 11).

### 2.    Respondent's Evidence of Service

As noted above, Respondent introduced surveillance video from his home security camera which shows that Miller did not affix documents to the front door on October 28, 2021 at 5:52 p.m. Respondent asserts that he was never served with the Contempt Motion and was unaware of this proceeding until he received "a damaged envelope in the mail which contained only a copy" of a text order requiring Wardak to serve the Contempt motion. (Dkt. No. 15, ¶ 47). Respondent asserts that there was "no other paperwork in the envelope" and that "while th[e] one page did provide a date and time for a hearing, it did not provide any notice as to the location of the hearing making an appearance impossible." (*Id.*, ¶ 48).

Respondent testified that he did not review any of his home surveillance video from Miller's first two attempts at service, on October 23, 2021, or October 25, 2021 and that he only

reviewed the surveillance video on October 28, 2021 from about an hour prior to when Miller arrived until around 9 or 10 that night.

### C.      Re-service of the Contempt Motion in November 2021

On November 17, 2021, the Court received a letter from Respondent, with the caption and case number from this action, stating that he has "not been served with nor received any paperwork in the above-referenced matter of Wardak v. Cavanaugh," but was filing it in "an effort to get this filing to the correct court / judge." (Dkt. No. 6). Respondent attached a letter he wrote to the United States District Court Judge handling the underlying Southern District of New York action, Judge J. Paul Oetken.

Respondent informed Judge Oetken that he had "received a torn and damaged envelope in the mail which contained a single piece of paper which appears to be a printout of an email from 'ecf.notification@nynd.uscourts.gov' . . . with a subject line of 'Activity in Case 5:21-mc-00047-BKS-TWD Wardak v. Cavanaugh Order.'" (Dkt. No. 6, at 2). Responded further stated "[t]here was no other paperwork in the envelope." (*Id.*). Respondent noted that the email "appears to be a 'text order' requiring Hamed Wardak to serve myself with an order to show cause why I should not be held in contempt of court for willful failure to obey a subpoena and requires service of the motion papers, and the text order, in person, by mail and by email by 10/28/2021." (*Id.*).[4] Respondent stated that "FRCP 45 requires that a subpoena" be hand served and that he has "never been served, nor have I ever received, any subpoena in the above-referenced matter." (*Id.*).

---

[4] The October 21, 2021 Text Order which Respondent appears to reference specifically states that oral argument on Plaintiff's motion would be "held in person on November 29, 2021 at 12:30 pm. in Syracuse, New York." (Dkt. No. 2).

In light of these letters, this Court issued a Text Order directing Plaintiff "to re-serve Mr. Cavanaugh with the pending motion papers, the Court's 10/21/2021 Text Order, and this Text Order" but that "[i]n view of the difficulties Mr. Wardak states he has encountered in serving Mr. Cavanaugh personally," the Court directed Plaintiff "to complete service via regular mail and file an affidavit of service by 11/23/2021." (Dkt. No. 5). Plaintiff complied with this direction; he filed an affidavit of service stating that the Court's two Text Orders and Plaintiff's pending motion papers were mailed to Respondent's residence on November 22, 2021. (Dkt. No. 10).

### D.     Respondent's Receipt of a Mailing from Plaintiff

Respondent states that on November 23, 2021, he received an envelope containing Plaintiff's reply in support of his Contempt Motion, but that this submission did not contain the moving papers and "nothing at all that would give me notice of the time and place of a hearing." (Dkt. No. 15, ¶ 150). Respondent has attached the contents of this mailing to his motion to vacate. (Dkt. No. 15-6).

### E.     Oral Argument on the Contempt Motion

Respondent did not appear for the oral argument on November 29, 2021, and on December 1, 2021, the Court entered an order finding Respondent in contempt of court. (Dkt. No. 11).

### F.     Findings Regarding Service of the Contempt Motion

After carefully observing the witness testimony and considering all of the exhibits and submissions in this case, the Court credits all of David Miller's testimony regarding his service of the contempt motion paperwork. Respondent did establish that Miller falsely stated in his affidavit of service that he attempted service at 5:52 p.m. on October 28, 2021, and affixed the Contempt Motion and Text Order to Respondent's front door at that time. However, Miller admitted his falsification and explained why he returned to Plaintiff's residence at 5:52 p.m.,

after the software failed during his earlier service that day. The Court notes that Miller's employer submitted an affidavit stating that, in the employer's experience, Miller "is a professional, experienced, reliable, and trustworthy individual and service-of-process agent" and that Miller's "service of process has never been disputed or challenged outside of this case." (Dkt. No. 22, ¶¶ 2–3). The Court found Miller's testimony credible, and his testimony regarding service on the morning of October 28, 2021 was corroborated by the October 2021 work order.

The Court did not find Respondent's testimony denying service of the deposition subpoena credible, given the extensive evidence of the service, and the Court did not find credible Respondent's testimony denying service of the Contempt Motion. While Respondent submitted home surveillance video documenting Miller's trip to the residence at 5:52 p.m. on October 28, 2021, Respondent asserts that he did not search for other times on October 28th or for recordings on any other dates that he disputes. Given the extensive evidence of mailing, the Court does not find it credible that Respondent only received a damaged envelope in the mail with a one-page text order and no other paperwork. And, in light of Respondent's November 16, 2021 letter to this Court, the Court does not find credible Respondent's assertion that it was impossible for him to attend the November 29, 2021 hearing because the text order setting the hearing date and time did not give him notice of the location of the hearing. (Dkt. No. 33, at 7–8). In evaluating Respondent's credibility the Court has considered the fact that Respondent was convicted of mail fraud in 2008, arising out of his conduct with an elderly client.[5] *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302 (2d Cir. 2005) (noting that the district court "had ample evidence from which to conclude that [an individual's] affidavit lacked credibility, including his

---

[5] Respondent admitted this conviction at the hearing. He acknowledged submitting his resignation from the practice of law, following this conviction, with the understanding that the fraud conviction would result in his disbarment.

fraud conviction and his two-year delay in moving to vacate for improper service" (citation omitted)).

Thus, after considering all of the evidence, the Court finds that on the morning of October 28, 2021, Miller served the Contempt Motion and the Text Order by affixing these documents to Respondent's front door after attempting to personally serve Respondent with the documents, and then causing these documents to be mailed Plaintiff. The Court further finds that Plaintiff's counsel emailed Respondent the Contempt Motion and the Text Order on October 21, 2021; that Plaintiff's counsel caused these documents to be mailed to Respondent's residence on October 23, 2021; and that Plaintiff's counsel caused the Contempt Motion and the Court's two Text Orders to be served by mail to Respondent's residence on November 22, 2021.

## III.   MOTION TO VACATE

### A.   Standard of Review

Respondent does not identify the Federal Rule on which he bases his motion to vacate. Plaintiff has construed it as a motion under Fed. R. Civ. P. 60, and the Court does as well. In light of Respondent's claim that he was not served with the Contempt Motion, and that there is a lack of personal jurisdiction, the Court construes his motion as arising under Rule 60(b)(4), seeking vacatur of an order that is void. "Under Rule 60(b)(4), a judgment is void if it is entered against a party over whom the court lacks personal jurisdiction." *DeCurtis v. Upward Bound Intern, Inc.*, No. 09-cv-5378, 2012 WL 4561127, at *4, 2012 U.S. Dist. LEXIS 143295, at *10 (S.D.N.Y. Sept. 27, 2012) (citing *Velez v. Vassallo*, 203 F. Supp. 2d 312, 317–18 (S.D.N.Y. 2002)). "Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service . . . must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).[6]

### B.    Analysis

Respondent argues that the Court lacked personal jurisdiction because (1) the process server, David Miller, did not actually serve Respondent with the Contempt Motion; and (2) Miller failed to exercise due diligence before affixing the Contempt Motion on Plaintiff's door and mailing a copy of the Contempt Motion to Respondent (commonly referred to as "nail-and-mail" service). (Dkt. No. 15, ¶¶ 31–35, 174–81).

The Local Rules provide, in relevant part, that in a "proceeding to adjudicate a person in civil contempt of court," service of "the notice of motion or order to show cause and the papers on which it is based" must "be made personally in the manner provided by the Federal Rules of Civil Procedure for the service of summons." N.D.N.Y. L.R. 83.4(a). Rule 4 of the Federal Rules of Civil Procedure provides that service of a summons and complaint on an individual may be effected by: (1) delivering process to the individual personally; (2) leaving process at the individual dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering process to an authorized agent of the individual. *See* Fed. R. Civ. P. 4(e)(2). Alternatively, Rule 4 permits service to be effected by "following state law for serving a summons in an action . . . in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

Under New York law, the following methods may generally be used to serve process on an individual: (1) delivering the summons to the person personally; (2) delivering the summons

---

[6] Plaintiff asserts that there is no basis for relief under Rule 60(b)(1), (b)(2) or (b)(3), and the Court agrees. (Dkt. No. 20, at 17–22).

to a person of suitable age and discretion at the "actual place of business, dwelling place or usual place of abode" and mailing the summons to the person's last known residence or "actual place of business"; (3) delivering the summons to an individual designated as the person's agent for service; or (4) "where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of the actual place of business, dwelling place or usual place of abode . . . of the person to be served and by . . . mailing the summons to such person at his or her last know residence or . . . actual place of business," (known as "nail-and-mail" service). *See* N.Y. C.P.L.R. § 308(1)–(4).

"What constitutes due diligence is determined on a case-by-case basis, focusing not on the quantity of the attempts at personal delivery, but on their quality." *Wilmington Sav. Fund Soc'y, FSB v. Zabrowsky*, 212 A.D.3d 866, 869 (N.Y. App. Div. 2023) (citations omitted); *see Barnes v. City of New York*, 51 N.Y.2d 906, 907 (1980) (explaining that "in determining the question of whether due diligence has been exercised, no rigid rule could properly be prescribed"). "'Nonetheless, a rough standard of due diligence has emerged from caselaw,' including 'approximately three attempts at service, optimally on non-consecutive days.'" *Feaster v. NYS Dep't of Corr.*, No. 17-cv-1151, 2022 WL 220245, at *2, 2022 U.S. Dist. LEXIS 13588, at *5 (W.D.N.Y. Jan. 25, 2022) (quoting *Weifang Xinli Plastics Prods. v. JBM Trading Inc.*, No. 11-cv-2710, 2014 WL 4244258, at *3, 2014 U.S. Dist. LEXIS 119073, at *9 (E.D.N.Y. Aug. 26, 2014)). Further, "[w]here attempts at serving process upon an individual are not sufficiently varied in time, New York courts have also required plaintiffs to attempt service at a defendant's place of employment." *Am. Builders & Contractors Supply Co., Inc. v. CR1 Contracting, LLC*, 565 F. Supp. 3d 330, 339 (W.D.N.Y. 2021) (citing *Sartor v. Utica Taxi Center, Inc.*, 260 F. Supp. 2d 670, 675–76 (S.D.N.Y. 2003)).

Respondent's argument that Miller failed to exercise due diligence before resorting to "nail-and-mail" service is unavailing. Miller attempted to serve Respondent with the Contempt Motion on three non-consecutive days at different times of day: Saturday, October 23 at 2:21 p.m.; Monday, October 25 at 6:22 p.m.; and the morning of Thursday, October 28.[7] Miller's three attempts to serve Respondent at varied times on three non-consecutive days, including a Saturday, constitute due diligence. *See HSBC Bank USA, Nat'l Ass'n v. Cupid*, 179 N.Y.S. 3d 118, 120 (N.Y. App. Div. 2022) (finding that a process server's "attempts to serve the defendant at her residence at different times on four different days, including two Saturdays, satisfied the due diligence requirement for service" (citations omitted)); *Goodman v. Bouzy*, No. 21-cv-10878, 2022 WL 16847284, at *6, 2022 U.S. Dist. LEXIS 204985, at *13 (S.D.N.Y. Nov. 10, 2022) (finding that a process server's attempts to serve the defendant five times satisfied the due diligence requirement where two "occurr[ed] at the same time of day (1:25 p.m. and 1:05 p.m.), [but] were not on consecutive days," "the third attempt was on a consecutive day, but at a different time (4:10 p.m.)," and the process server attempted "personal service on two more occasions, one on a Saturday"). Moreover, Miller knew from a neighbor who Miller spoke with on July 26th that Respondent lived at that address, and during the course of Miller's attempts to serve Respondent, Miller twice saw a man inside (whom Miller identified as Respondent at the hearing) not responding to Miller's attempts to effect personal service. (Dkt. No. 1-3, at 17); *see S.E.C. v. Reynolds*, 112 F.3d 505, 505 (2d Cir. 1996) (finding that due diligence was exercised where the server, *inter alia¸* confirmed the defendant's residency by speaking with the

---

[7] Although the affidavit does not state the days of the week, "the court may take judicial notice of facts established by a calendar, as the accuracy of a calendar cannot be reasonably questioned." *Fellows v. Baker*, No. 20-cv-139, 2021 WL 4200875, at *15 n.6, 2021 U.S. Dist. LEXIS 176050, at *47 n.6 (D. Vt. Mar. 10, 2021) (citations omitted); *see* Fed. R. Evid. 201(b)(2).

defendant's neighbor and attempted personal service on three occasions before resorting to service under C.P.L.R. 308(4)).[8]

The Court rejects Respondent's argument that service was insufficient because Miller did not make inquiries into Respondent's place of work. On this record of attempted service, and where Miller's attempts to serve Respondent included a Saturday and were sufficiently varied in time "to insure that [Respondent] would reasonably be expected to be home," Miller was not required to attempt service at or inquire about Respondent's place of employment. *Sartor*, 260 F. Supp. 2d at 675; *see Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 11-cv-2710, 2014 WL 4244258, at *4–5, 2014 U.S. Dist. LEXIS 119073, at *11 (E.D.N.Y. Aug. 26, 2014) (finding due diligence where a process server attempted to serve the defendant "on three non-consecutive days, with at least one attempt made before business hours" and rejecting defendant's argument that he should have served him at his place of employment "because due diligence does not necessarily require a process server to serve a party at his place of employment" (citation omitted)).

The Court finds that Plaintiff served Respondent with the Contempt Motion and this Court's October 21, 2021 text order scheduling a hearing on the motion under the "nail-and-

---

[8] At the hearing, Respondent also argued that there were conflicting affidavits of mailing, which he claims state different dates that the affidavit of service for the Contempt Motion was mailed to him. However, Respondent refers to the "Certificate of Service" from Plaintiff's former counsel, Rhett Millsaps, and Miller's Affidavit of Service, which both state that the Contempt Motion and Text Order were mailed on October 28, 2021. (Dkt. No. 3; Dkt. No. 4, at 3). That the documents were *filed* on different dates—October 28, 2021 and October 29, 2021—does not implicate improper service of process. Further, Respondent stated that these mailings "show up as nonreceived when [he] plug[s] [the reference number] into USPS," but offered no evidence to support this argument. Accordingly, the Court finds neither of these arguments persuasive.

mail" service permitted under C.P.L.R. § 308(4).[9] Accordingly, the Court denies Respondent's

motion to vacate the Contempt Order pursuant to Federal Rule of Civil Procedure 60(b)(4).[10]

## IV.     MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff seeks $18,075 in attorneys' fees and $2,024.63 in costs, for a total of $20,099.63

for Respondent's noncompliance with the subpoena. (Dkt. No. 12, ¶¶ 2–3). Respondent does not

challenge the attorneys' fees, but argues that the costs associated with service of process are

unreasonable. (Dkt. No. 15, ¶ 193; Dkt. No. 32, ¶¶ 16–17).

A court "may award appropriate attorney fees and costs to a victim of contempt." *Casale*

*v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) (citing *Weitzman v. Stein*, 98 F.3d 717, 719

(2d Cir. 1996)). "The Second Circuit has 'express[ed] no opinion' on whether a showing of

willfulness or bad faith is required before attorney's fees may be awarded for a violation of a

court order, . . . but willfulness 'strongly supports granting attorney's fees and costs to the party

prosecuting the contempt.'" *Branch of Citibank, N.A. Established in Republic of Arg. v. De*

---

[9] Respondent also argues that the Contempt Order must be vacated because (1) he was not personally served with the deposition subpoena, as required by Federal Rule of Civil Procedure 45(b), (Dkt. No. 15, ¶ 35), and (2) Miller failed to complete the requisite due diligence before completing nail-and-mail service for the deposition subpoena, as required by N.Y. C.P.L.R. § 308(4), (*id.* ¶¶ 97–102). First, "[a]lthough some courts have required service [of a subpoena] under Rule 45 by personal delivery, courts in the Second Circuit have, increasingly, authorized alternative service, as long as service is calculated to provide timely actual notice." *Juice Creative Group, LLC v. UncommonGood, Inc.,* No. 22-cv-01175, 2023 WL 5012192, at *2, 2023 U.S. Dist. LEXIS 136689, at *6 (D. Conn. Aug. 7, 2023) (collecting cases and noting that "the Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service") (citation omitted); *see In re Polygon Global Partners LLP*, No. 22-cv-3804, 2021 WL 2117397, at *6, 2021 U.S. Dist. LEXIS 98800, at *17–18 (S.D.N.Y. May 25, 2021) (finding service of subpoena by mail, following delivery to security personnel at respondents' offices, was sufficient to satisfy Rule 45). Further, Miller attempted to personally serve Respondent with the subpoena eleven times before resorting to "nail-and-mail" service. (Dkt. No. 1-3, at 16–18; Pl. Ex.14). Such service was calculated to provide timely actual notice. *See Tube City IMS, LLC v. Anza Cap. Partners, LLC*, No. 14-cv-1783, 2014 WL 6361746, at *2–3, 2014 U.S. Dist. LEXIS 160667, at *5–6 (S.D.N.Y. Nov. 14, 2014) (granting request to serve subpoena by certified mail and affixing subpoena to door); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116, 2009 WL 1313259, at *2–3, 2009 U.S. Dist. LEXIS 39714, at *7–8 (S.D.N.Y. May 11, 2009) (authorizing service by certified mail after multiple attempts at personal delivery).

[10] The Court denies the remainder of the requests in Plaintiff's motion to vacate. The Court previously addressed Respondent's argument that the subpoena was defective. (Dkt. No. 11). There is no evidence of any misconduct by counsel for Plaintiff and the Court denies Respondent's request to refer David Miller for criminal prosecution.

*Nevares*, No. 21-cv-6125, 2022 WL 1315587, at *2, 2022 U.S. Dist. LEXIS 80284, at *5

(S.D.N.Y. May 3, 2022) (internal citation omitted) (first quoting *Jacobs v. Citibank, N.A.*, 318 F.

App'x 3, 5 n.3 (2d Cir. 2008) (summary order); and then quoting *N.Y.S. Nat'l Org. for Women v.*

*Terry*, 952 F. Supp. 1033, 1043–44 (S.D.N.Y. 1997), *aff'd* 159 F.3d 86, 96 (2d Cir. 1998)).

Here, the evidence established that Respondent attempted to avoid service of the

subpoena; that after eleven attempts to serve the subpoena it was ultimately affixed to his front

door and mail to his home; that he made no efforts to comply with the subpoena; and that he had

notice of the in-person hearing scheduled for November 29, 2021 and failed to appear. The Court

finds that Respondent willfully failed to comply with the subpoena and an award of attorneys'

fees and costs incurred as a result of the noncompliance with the subpoena is warranted.

### A.    Attorneys' Fees

When the Court awards attorneys' fees, it "has wide discretion . . . in determining the

reasonableness of any such award." *Medina v. Buther*, No. 15-cv-1955, 2019 WL 4370239, at

*5, 2019 U.S. Dist. LEXIS 23529, at *11–12 (S.D.N.Y. Sept. 12, 2019) (citation omitted). In

determining the reasonableness of requested attorneys' fees, "the Court begins by using the

'lodestar method' to calculate a 'presumptively reasonable fee.'" *McGlynn v. Cools, Inc.*, No.

19-cv-3520, 2020 WL 6561658, at *4, 2020 U.S. Dist. LEXIS 116761, at *10–11 (S.D.N.Y. July

1, 2020) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The lodestar is

"the product of a reasonable hourly rate and the reasonable number of hours required by the

case." *Id.*

Plaintiff's counsel submits billing statements reflecting that Rhett Millsaps worked 13.4

hours and that James Ji worked 43.8 hours, for a total of 57.2 hours, preparing and filing the

Contempt Motion, preparing and filing a reply to Respondent's November 16th letter to the

Court, and attending the Court's in-person hearing on the motion. (Dkt. No. 12, ¶ 1; *see generally* Dkt. No. 12-2).

The Court finds that the descriptions in the billing records include sufficient details to enable the Court to assess reasonableness and, having considered Plaintiff's filings, the Court finds that 57.2 hours is a reasonable number of hours. *See Leser v. U.S. Bank Nat. Ass'n*, No. 09-cv-2362, 2012 WL 580489, at *5, 2012 U.S. Dist. LEXIS 21626, at *16–17 (E.D.N.Y. Feb. 21, 2012) (finding 47.2 hours reasonable where counsel was "attempting to procure [a non-party witness's] compliance with [a] subpoena," resulting in civil contempt sanctions); *Weitzman v. Stein*, 891 F. Supp. 927, 932–33 (S.D.N.Y. 1995) (finding 58.25 hours reasonable where counsel "prepar[ed] an order to show cause calling for the contempt hearing, research[ed] the law, prepar[ed] witnesses for the contempt hearing, prepar[ed] documents for the contempt hearing, and attend[ed] the contempt hearing," as well as filing briefs), *aff'd in relevant part* 98 F.3d 717 (2d Cir. 1996); (*see, e.g.*, Dkt. No. 12-2, at 2 (billing 0.9 hours to "[c]onfer[] with DLS re: [Respondent] service; draft[] and file[] certificate of service re: [Respondent] OTSC papers")).

Plaintiff seeks to recover attorneys' fees based on the following hourly rates: $450 for Mr. Millsaps and $275 for Mr. Ji. (Dkt. No. 12-2).

The Court "looks at prevailing rates within this District to determine the reasonableness of the proposed rates." *Tessemae's LLC v. Atlantic Cap. LLC*, No. 18-cv-4902, 2019 WL 2635956, at *4, 2019 U.S. Dist. LEXIS 108020, at *10 (S.D.N.Y. June 27, 2019) (citing *Bergerson v. N.Y. State Off. of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)). "Reasonable rates in this district have been determined to be anywhere from $250 to $350 for partners, $165 to $200 for associates, and $80 to $90 for paralegals." *Oriska*

*Corp. v. Highgate LTC Mgmt., LLC*, No. 21-cv-104, 2022 WL 17475599, at *2, 2022 U.S. Dist. LEXIS 219151, at *4 (N.D.N.Y. Dec. 6, 2022) (citations omitted).

The Court notes that Mr. Millsaps submitted a sworn declaration but included no information about his or Mr. Ji's experience or expertise. (Dkt. No. 12). However, according to the firm's website, Mr. Millsaps is the firm's founder and managing member and he has fifteen years of experience. *Rhett O. Millsaps II*, LEX LUMINA PLLC, https://www.lex-lumina.com/rmillsaps (last visited Sept. 12, 2023); *see Burns v. Scott*, 635 F. Supp. 3d 258, 284 (S.D.N.Y. 2022) (adopting report and recommendation where plaintiff did "not submit[] any evidence of his attorneys' experience and skills or any other relevant factors that would assist the Court in assessing the reasonableness of the hourly rates he request[ed]" but the Court considered the attorney's biography on the firm's website). Thus, the Court finds that a partner rate of $350 per hour is reasonable for Mr. Millsaps. Mr. Ji is not listed on the website and thus, in the absence of any additional information about his qualifications, the Court finds that an associate rate of $175 per hour is reasonable in this case.

Therefore, multiplying these rates by the reasonable number of hours, the Court finds that Plaintiff is entitled to $12,355 in attorneys' fees: $4,690 for Mr. Millsaps and $7,665 for Mr. Ji.

**B.      Costs**

Plaintiff seeks to recover $2,024.63 in costs, comprising $1,591.86 in process server fees, $145.77 in lodging costs for Plaintiff's attorney, and $287 in filing fees. (Dkt. No. 12, ¶ 2). Respondent contests the service fees and argues that a reasonable rate for service of process in Onondaga County is "$50.00 to $150.00 per item served, regardless of the number of attempts made." (Dkt. No. 15, ¶¶ 193–94).

In awarding costs, courts "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Patsy's Brand, Inc.*, 2022 WL 1026577, at *5,

2022 U.S. Dist. LEXIS 64255, at *14 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "Only those costs necessary to the representation of a client and substantiated by the requesting party may be recovered." *Id.* (citations omitted); *see Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (explaining that the "compensatory goal" of civil contempt "can only be met by awarding to the plaintiff any proven damages").

Here, Plaintiff submits six process server invoices from Demovsky Lawyer Service ("DLS") documenting charges for serving Respondent.[11] (Dkt. No. 12-1, at 2-7). Plaintiff does not explain the charges within the invoices. Based on their dates, one invoice corresponds to service of the deposition subpoena, (Dkt. No. 12-1, at 2), and the other five correspond to the Court's orders directing Plaintiff to serve Respondent, (*id.* at 3–7). Invoices from November and December 2021 correspond to the Court's orders directing service by first-class mail and charge $125.70 and $93.23, respectively. (Dkt. No. 12-1, at 4, 5). These charges are clearly unreasonable for service by first-class mail. Thus, the Court will award $8 per item mailed. *See* 28 C.F.R. § 0.114(a)(3) (awarding $8 per item mailed for United States Marshal Service to effect service by mail). The invoices also charge $40 for a "witness fee," $30 for "drafting of check," and $31.50 for "copies." (Dkt. No. 12-1). The witness fee, which Miller served on Respondent in August 2021, (Dkt. No. 1-3, at 17), is a cost associated with Respondent's deposition for the proceeding in the Southern District of New York, not this contempt proceeding. Moreover, during the hearing, Respondent stated that the deposition has occurred. For these reasons, the Court declines to award the witness fee. Plaintiff also fails to explain the "drafting of check" fee that appears in two invoices, (Dkt. No. 12-1, at 2, 7), and thus the Court declines to award it.

---

[11] Miller testified that he does not serve process for DLS directly, but its name sometimes appears at the bottom of his work orders, which indicates that DLS hired Chase Agency to serve process. The affidavits of service in this case are on DLS's letterhead. (Dkt. Nos. 1-3, 4, 10, 14, 18, 26).

Further, because "[t]he 'going rate' for photocopying is $0.10 per page," and Plaintiff's invoices document 124 copies, the Court finds it reasonable to award Plaintiff $12.40 for copies. *D.B. on behalf of S.B. v. N.Y.C. Dep't of Educ.*, No. 18-cv-7898, 2019 WL 6831506, at *7, 2019 U.S. Dist. LEXIS 68880, at *20 (S.D.N.Y. Apr. 22, 2019) (citations omitted).[12] The remainder of the process server fees Plaintiff seeks are reasonable and substantiated. Thus, the total amount of costs for service and copies documented in the invoices is $1,274.33.

Plaintiff also submits a receipt from a hotel in Syracuse, NY totaling $145.77 to substantiate lodging costs incurred by his counsel to attend the November 29, 2021 contempt hearing. (Dkt. No. 12-1, at 8–9). The Court awards the lodging costs included in the receipt. *See Montanez v. City of Syracuse*, No. 16-cv-550, 2020 WL 5123134, at *16, 2020 U.S. Dist. LEXIS 157224, at *45–46 (N.D.N.Y. Aug. 31, 2020) (explaining that "district courts within this Circuit regularly award hotel costs for out-of-district counsel" (citations omitted)). Finally, although Plaintiff does not substantiate his request for filing fees, the docket reflects that Plaintiff paid $49 to file his application for an order to show cause and sanctions. Thus, Plaintiff may only recover $49 in filing fees.

Accordingly, the Court awards Plaintiff $12,355 in attorneys' fees and $1,469.10 in costs, for a total of $13,824.10.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Respondent's motion to vacate (Dkt. No. 15) is **DENIED**; and it is further

---

[12] One of Plaintiff's invoices also includes a $40 charge for "disbursements." (Dkt. No. 12-1, at 7). Plaintiff offers no explanation for this charge and the Court declines to award it.

**ORDERED** that Plaintiff's motion for attorneys' fees and costs (Dkt. No. 12) is

**GRANTED in part**; and it is further

**ORDERED** that Respondent shall pay Plaintiff a total of **$13,824.10,** consisting of

**$12,355** in attorneys' fees and **$1,469.10** in costs.

**IT IS SO ORDERED.**

Dated: <u>September 13, 2023</u>
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge